May proceed. So, good afternoon, Your Honors. Tom Pollack on behalf of Appellant Raymiel Batrawi. Your Honors, we believe that the Court's order here, what the government sought in their crime-fraud motion and what the Court ordered, was the broadest assault on the attorney-client privilege that we have seen in any reported decision having to do with the crime-fraud exception. And the breadth of it is revealed in the order itself, because the order does not talk about specific communications. It talks about categories of topics. And it says that all communications, whether written or oral, that fall within these categories of conversations are accepted from the attorney-client privilege, documents must be turned over, and the lawyers must actually testify as to those subject matters. Now, we believe that the principal issue in this case is that whether the crime-fraud exception applies only to communications in furtherance of a crime or fraud, which we believe is Ninth Circuit law very clearly spelled out in its cases, or whether, according to the government, it's enough to say that the communications are related, are related to the crime or fraud. The test that the cases put forth is this. They say, okay, first you look at whether or not a crime or fraud was committed and whether the lawyer's services were secured in connection with that. And then you look at whether the communications themselves were in furtherance of the crime or fraud, because the theory behind it is there will be a waiver of the attorney-client privilege if a lawyer's services were secured in furtherance of a crime or fraud, but we're not going to open up the doors entirely to the communications between the lawyer and the client, only to those communications that actually further the crime, further the fraud. And each of the Ninth Circuit cases that we cite and that the government cites has that very language, that the crime or fraud that the communication with the lawyer must be in furtherance of the crime or the fraud. Now, what the district court did was they, the court determined first that the lawyer's services were secured in connection with the crime or fraud. And we believe that was wrong. We spell it out in our brief why, and if I have a chance to do that, at the end, I may go into a few points there, but I'm really going to focus in furtherance part, because I think that's the critical part right now. The court then said, having found that, you don't need to look at the particular communications. It's enough if they are related to the crime or the fraud, and the district court held that the 12 broad categories set forth in her order are related to the It has to be wrong because the law is you have to look at each communication. And the court below clearly did not do that, and the government conceded that the court could not do that because the government admitted during argument below that it didn't know what the communications were. The communications it was seeking, whether in documentary form or oral form, they didn't know what they were. So there was no ability for the district court to actually look at the particular communications that were ultimately ordered to be disclosed to the government. And the court used this reasonable relationship test. And the reasonable relationship test is, if there's a reasonable relationship between the subject matter of the communications and the crime, whether or not they are in furtherance of the crime, they get produced. And if I might, Your Honor, I'd just like to talk a minute about the various cases. The two principal cases are Bower and Shen. And they're interesting because in Bower, the court very clearly went through this analysis. You have a client who goes to a lawyer to help him prepare a petition in bankruptcy. And the lawyer, they meet 12 times in connection with preparing this petition, which later gets filed. And ultimately, it's determined that the client concealed assets in the bankruptcy proceeding. At trial, the government put the lawyer on, and the lawyer testified that I told my client that he had to list all his assets, he had to be truthful, he had to disclose everything. And he didn't, he didn't, obviously didn't listen to him because he didn't disclose all the assets. This Court held in that case that that communication was not in furtherance of the crime or fraud because there was no causal connection or functional relationship between the lawyer's advice and what the client actually did. Because the lawyer said, you have to disclose everything. The client didn't take that advice. He didn't disclose everything. So this Court held there was no functional relationship. And I suggest, Your Honor, if you apply that to this case, clearly that was not done here. It couldn't have been done here because the breadth of the order doesn't allow for the kind of determination, what was the nature of the particular communication between the client and the lawyer. And, in fact, if you look at the Court's order, you'll notice that every single one of them talks about when they describe the scope of what has to be produced, they talk about one of the things you have to talk about is the legality. So if there were conversations between the lawyer and the client where the legality of or the requirements of a 13D or what the law was with respect to borrowing money through stock loans, if there was a conversation about the legality, regardless of what the conversation was, the Court's order requires it to be turned over. And the problem with that is you could very well have the situation in Bower. You could have the lawyer saying to the client, you must disclose, you must tell me everything that there is to know. For example, you must tell me, do you own any of the other companies that own any stock here? And the government points to Ultimate as the principal, what they call nominee. And if the client says, no, I don't own any others and doesn't report it, you have a Bower situation because he's not listening to the lawyer's advice. Or you have a situation where the client tells the lawyer, I own – I had an interest in Ultimate before October of 2000. I had some interest in it, but in October 2000, I ceased having an interest. And the lawyer decides not to report that. No crime fraud. That communication is not in further incentive of any crime, so it doesn't get reported. And I could run through a whole host of examples for each category of the court's order where perfectly innocent communications between the lawyer and the client are held, and yet the order requires that they be turned over without an analysis as to the particular conversation or the particular communication. And that really is the fatal flaw with the court's – with the district court's order. Now, the government relies on Chen in its brief. And Chen's kind of interesting because Chen is a situation where the court has different language in different places. In one place, the court says it must be in furtherance, that the communication must be in furtherance of the crime or fraud in order for the exception to apply. In another place, the court says the communication must be in furtherance or related to. Or related to. That's the only place where the related to language appears anywhere. And I submit, Your Honors, that that language was used loosely and was not intended to be dispositive. And, in fact, the facts of Chen are also kind of unique. Because in Chen, you have a situation where the defendant is trying to hide the fact from the government that they used different numbers when they reported what their customs obligation was and when they reported what their income tax obligation was. So they go to a lawyer for the sole purpose of having the lawyer file a form with Customs saying that they underestimated. And here's a check for the additional money we owe you. Because they were afraid that Customs and the IRS were going to talk with one another and they were going to find out that they understated the cost of goods sold here. And to get around that, they hire a lawyer to follow this disclosure statement. And this Court says, in that case, there must be, the crime-fraud exception applies because the only purpose for hiring the lawyer, the only purpose was to help commit the crime, was to file this phony disclosure statement that allowed the defendant and their minds to avoid the risk that the IRS and Customs would get together. In all of the other cases ---- How about inter-agrande jury proceedings for an incorporation? You know, that's a good example, Your Honor, because in that case, what you have is you have a limited number of conversations that the government is trying to get access to. And what the Court says there is they say the focus, the defendant's focus in that case was on what the lawyer said and what the lawyer did, and that that's not right. You're not supposed to be looking at what the lawyer does. You're supposed to be looking at what the client does. And because of that, they found that the exception was proper. But what's interesting about that case is that they very specifically refer to United States v. Richard Roe, which is a seminal Second Circuit decision on the same issue. And Richard Roe very specifically says that the relevant standard is not the proper standard. It's not whether a communication is relevant  or not relevant. It's whether the particular communication itself furthers a crime. And in that case, the Ninth Circuit said we ---- the way we read Richard Roe, the district court there complied with that, that they looked at the particular communications and they determined that those communications themselves were in furtherance of the crime or fraud, and they did not ---- they did not base their decision on the relatedness standard. And they say that very expressly. And here, the district court below does expressly base her decision on the relatedness standard. She specifically says in the order ---- This is at paragraph 16 of the order. And as a result of her ruling, she totally took away from the analysis, let's look at a particular communication, and let's see whether or not it really is in furtherance of a crime or fraud. And her decision has, I think, far-reaching consequences  because if that were to be the law, if you could basically say that because there was an omission that was made, and the thrust of the government's case, really, they have ---- it's twofold. One is that stock loans were taken out by Mr. Elbitrowy and by Ultimate in order to buy more stock, mostly. And secondly, that Mr. Elbitrowy really owned Ultimate and was trading in Ultimate as a nominee and failed to disclose that to the marketplace. That's basically what their case is about. But if you have a situation where under the crime-fraud exception, all it takes is for a party, and it can be a civil litigant, because the crime-fraud exception applies both to civil and criminal cases, to allege that an issuer omitted to make a material representation in a ---- in a registration filing or in a 10-K, and according to the Court's decision, everything related is now opened up and the attorney-client privilege goes away with respect to everything. And in this case, if you look at the scope of the order, and this is where I'm getting a little bit into what Mr. Cabrillo is going to argue, is that the order calls for not just all of the securities filings by Mr. Elbitrowy, it calls for all of the securities filings by Genesis. And what's important to recognize here is that Genesis, when it first went public, hired Nita and Maloney as their corporate counsel. And thereafter, Nita and Maloney represented them in connection with all the SEC filings, all of the mergers and acquisitions, all of the regular corporate matters that they had to handle. Well, this order requires that all of the securities filings of Genesis, the 10-Ks, the 10-Qs, whatever else they had to file, no attorney-client privilege for any of that, presumably on the theory that Mr. Elbitrowy, as an agent of Genesis, committed a crime and that those communications must have been in furtherance of it. But again, you have that blunderbuss approach where 10-K covers a huge amount of material, the government's claiming, well, Mr. — there should have been a disclosure in the 10-K, there should have been a disclosure that Mr. Elbitrowy owned Ultimate, even though as of October 2000, the government admits he no longer owned it. But nevertheless, there should have been that disclosure. And because there wasn't, everything in the 10-K now gets open for review. All communications with the lawyers having to do with anything get open for review. And that, I suggest, Your Honors, would be a — really a huge intrusion in the attorney-client privilege. One of the things that distinguishes this case from the other cases is if you look in each of the other cases that deal with the attorney-client privilege, you're dealing with a very discreet set of conversation or communications between a client and a lawyer. You're dealing, in the Lawrence case, with a lawyer who tells his — a client who tells his lawyer, you know, I know they've subpoenaed documents from you, but we don't have the documents, they're over — they're out of the country, and whether those conversations can be pierced. In Chen, you have a disclosure statement that's filed by a lawyer given to the — given to Customs, which has phony information on it. In Bower, you have a conversation with the lawyer where he's telling the client, you know, you have to include everything in your bankruptcy petition. Here, you have these 12 categories of the — of topics where every communication under the sun, every communication without knowing what any particular communication says, is ordered by the court, disclosed pursuant to the law. And that's just not — that's not appropriate. Now, the government comes back and they say, well, what do we do? How do — how are we supposed to know — how are we supposed to know that the — if we don't know what's in the documents, how do we make our showing? And that's exactly what the Zolan, the Supreme Court case, Zolan is about, because that says, if you make a showing that a reasonable person could believe that disclosure of the documents might lead to relevant evidence that would be germane to whether or not the government met the burden of showing a crime or fraud, then the proper procedure is for in-camera review. And that's what we suggested to the court below. We said, okay, the government doesn't know what's in the documents, but, you know, many, if not all, of those communications are not going to have anything to do with criminal conduct and are not going to be in furtherance of a crime. The proper procedure is to have an in-camera review of the documents in question, and then the court can determine, by looking at the documents, whether or not they support the finding of crime-fraud. Kennedy. How do you read the district court's in-camera order, suggestion? Yeah. The way I read that, and we looked at that very carefully, is what she's saying is that if you object, if you believe that any of the documents that you have don't fall within my crime-fraud exception, i.e., the 12 categories, then you can come to me, if you have a good-faith dispute as to whether it's in one of those 12 categories, you can come to me, and I will look at it. It says the crime-fraud exception as defined in this document, and I think it's what she said, something like that. It's – I actually – I think the way she says it, the crime-fraud – I'm sorry? As the court has defined it. Yes. And the way she defines it is she says the crime-fraud exception are all – all communications within the 12 categories that I've delineated here. That's one way to read it. The other would be just to say, well, it's – is it related to the, you know – it's hard. I acknowledge that one might read it that way. I don't think that's the way – I really don't think that's the way the language comes out, and I don't think – and we were in the position where she's saying to us, you know, you can't assert the attorney-client privilege at threat of contempt. All you can do is you can raise with me, if you think a document doesn't fall within any of these 12 categories, because I'm finding that all 12 categories – Exactly one way to read it. Yeah. Your Honor, I notice I only have a few minutes left, a minute or so left, and I'd like to reserve the rest. All right. Thank you. Mr. Newhouse. Actually, I'd like to reserve the rest for rebuttal. I think I've given it to Mr. Newhouse's time. Mr. Newhouse, how much time would you like to give us? Just two minutes, Your Honor. All right. Would you like two minutes? I hope to be very brief. May it please the Court. Mr. Newhouse, on behalf of Adnan Khashoggi and Ultimate Holdings, I have graciously ceded my time to Mr. Pollack, Your Honors, for two reasons. First of all, that Mr. Pollack is far more eloquent than I am, and on the important issue to us, obviously the crime-fraud issue, I think he's made all the arguments that the Court needs to hear. And indeed, if the Court isn't persuaded by those arguments, then Mr. Khashoggi's and Ultimate's position that there was an attorney-client privilege, of course, becomes somewhat less important. We do take issue with the district court's ruling. We think the district court, to get right to the nub of it, had the wrong focus. The district court persuaded by the government that the focus was on the attorney's expectations, and there was some documentation from Nida Maloney, Mr. Maloney specifically, that he didn't or the law firm didn't consider Ultimate to be their client, and apparently that was enough for the district court. Well, Your Honors, the government has adequately and accurately set forth the traditional Wigmore test for the attorney-client privilege at page 61 of their brief, and I submit to you, if you go through the elements of that test, Ultimate and Mr. Khashoggi satisfied the test, which is to say legal advice or services in this case, because there's no dispute that filings were made by Nida and Maloney on behalf of Ultimate, were made from a professional legal advisor, the Nida Maloney law firm or a counselor. Third, the communications from Ultimate and Mr. Khashoggi, to the extent that Mr. Khashoggi had communications related to that purpose, four, they were clearly confidential, as Mr. Khashoggi indicated in his in-camera declaration file that he said, I would have had no reason to communicate with counsel except for assisting counsel in rendering legal services. The communications were by a client or from the counsel. There were communications going both back and forth between Nida Maloney and mostly Ultimate Holdings, which was this Bermuda firm which basically prepared the filings on behalf of Ultimate. And sixth, although the government doesn't list it, of course, the sixth traditional Wigmore test is that there was no waiver. Of course, one of the findings of waiver could be crime fraud, but there is nothing in the record to indicate that Ultimate or Mr. Khashoggi did anything other than act in accordance with the belief that they were communicating with an attorney. The focus is and should be under the law on the client and the client's expectations, were they reasonable? And we respectfully submit that the district court erred when it concluded that because the lawyer didn't see it that way, there wasn't an engagement letter, the fees were Unless the Court has any questions on that point, I would submit. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Stephen Kaczeres for Appellee, United States of America. The appellants have raised several claims in this appeal. I'll try to focus on just what's been addressed here so far. Well, why don't we start with the last one, or the last one that was raised? With respect to the claim by Khashoggi and Ultimate and their challenge to the district court's finding of no attorney-client relationship, first it's important to recognize the burden was on Khashoggi and Ultimate to establish an attorney-client relationship that gave rise to a privilege. Now, a close reading and a look of the facts and evidence submitted by Khashoggi and Ultimate in trying to meet their burden shows only a self-serving declaration by Khashoggi, and then they point to declarations by the lead attorney, Theodore Maloney, for NIDA and Maloney. Now, in Khashoggi's declaration, he states, I believe I had an attorney-client relationship through Ultimate. That's fine. That's what he's claiming he believes. And the case law does say we look to what the reasonable expectations of the putative client. So the question really comes down to, was that belief reasonable based on the evidence submitted by the government to the district court in conjunction with the statements from the lawyers? Now, the evidence submitted by the government in this case shows that Khashoggi never even surfaced in relation to Ultimate until October of 2000. So from 1997 all the way until October of 2000, the administrators for Ultimate in Bermuda didn't know who he was. They didn't know he had a connection to Ultimate, and they didn't even know him by reputation, from his, I guess, his reputation in the public sphere. They had no idea who this individual was. Yet he's trying to claim an attorney-client privilege and relationship for that period, as well as the period post-October of 2000. What happened in October of 2000? The government submitted overwhelming evidence that that is when the NASDAQ investigators began inquiring into the ownership of Ultimate, which had been disclosed as loaning tens of millions of dollars to Genesis, as well as purchasing tens of millions of dollars' worth of Genesis stock in the public market. At that time, the beneficial ownership was undoubtedly Mr. Alpetraoui. Then it was switched to Mr. Khashoggi, and Mr. Khashoggi, I guess, is claiming an attorney-client privilege through his relationship with Ultimate going forward. The government doesn't believe that it's reasonable for Mr. Khashoggi to believe he established an attorney-client relationship based on the timing of his entering into the facts of this case. But not only that, if you parse the language used by the lead attorney, Ted Maloney, in his description of the services he provided to Genesis on the one hand, and the services he provided to Ultimate on the other. With respect to Genesis, he very forthrightly says, we provided lots of services, legal advice, prepared filings, agreements, documents, and whatnot, just like a corporate counsel would generally perform. For Ultimate, on the other hand, he's very careful in parsing the language in what he states he did. He says, we prepared filings for large shareholders of our client Genesis, including Ultimate. So they prepared these 13D filings for their large shareholders of Genesis. Doesn't say provide any legal advice. Well, if they provided the filings, though, that creates a relationship, don't you think? If you're saying you're making regulatory filing, you're signing off as the attorney for Ultimate. Well, the attorney doesn't sign off on the filing. The actual client signs off on the filing. And here, when you're talking about... I saw the... Well, never mind. Go ahead. I mean, it's theoretically, and some of the evidence within the record of this case is, the trading data was assembled, sometimes helped, or with assistance from Mr. Albetraoui, sometimes just the individual administrators out in Bermuda, who would provide this information. It was inserted into the form and disclosed to the market. Where's the legal advice? Mr. Maloney doesn't say he provided any legal advice. And based on Mr. Khashoggi's entry into the relationship, there's really nothing to suggest that his belief was reasonable. Okay. Now, not only that... I don't want to divert you from the rest of your... I'm sorry. And I just wanted to mention that the district court's order with respect to no attorney-client privilege or relationship for Khashoggi is also backed up by a finding that even if such a relationship existed, the crime-fraud exception applied based on the government's showing. So, not only did the court find no attorney-client relationship, if the court erred, it was backed up by the crime-fraud finding by the district court. What is your construction of the in-camera clause of the order? I gather you drafted it. Yes, with much assistance from some very experienced people in my office. That is true. So, what's your construction? My construction is that to the extent that the appellants viewed a certain communication to be outside the scope of that order, and what that order required was a disclosure of communications that were reasonably related to the services provided by NYTD and Maloney in furtherance of the crimes and frauds. To the extent they had a problem with the communication that was going to be disclosed, and there were really two elements to that. Is it beyond the scope of those 12 categories? But it's important to remember in addressing the scope here, the district court rejected the government's request for opinion work product of the attorneys. The court denied that and said unless there's a greater showing, no work product can be disclosed. Well, let's say one of the categories was the disclosure obligations. Let's assume that they have a problem, that the communication clearly is part of that category, but they don't think it's relevant to any crime that's been asserted by the government. What's the government's position on their right to seek in camera review of that? I believe they could have brought it to the district court. I mean, in essence, it's still their privilege to the extent they want to hold it close to the vest and put the court to the challenge of actually getting the court to find specifically that this document is required to be disclosed. They could have done that. The option is there. It's available to the appellant. Well, I'm just not sure how wide the option is. Can they come in and say, well, yes, this is one of the documents listed, but it doesn't, it's really not. Well, the clause, I think, in the order says good faith, a good faith belief. To the extent the appellant would have came in. It depends on what the standard is. If the standard is saying, if you think this document that the government now wants isn't one of these listed, you can come in and argue about it. Or maybe it says, if you think that even these listed documents don't fall within the crime fraud exception, you can come in and argue about it. Well, I don't think the district court was opening itself up to the latter. I do think the district court was limiting this to, to the extent, and I think this is actually an important point, is that the 12 categories of. That means this isn't a real substitute for what they're asking for. Well, the 12 categories of communications outlined in the order, to the extent they took place, would have been in furtherance of the crimes of frauds. Much has been made of the quote by the government at the district court level that, well, we don't have access to the actual privileged communications between the appellants and their attorneys. That's absolutely true, and that's unlike the Chen case. Now, but I think their argument really is that the district court should have reviewed all of this in the first instance, period. Your argument seemed to be that this was, or at least it seems to me it's part of the government's argument, is well, there's a substitute for this. You can go seek review, but the two are somewhat different. Well, they are different, but I think going back to the case law is necessary to assess that. In the Zolan case, the in-camera review was for the purposes of determining whether or not the prima facie case had been made. In this case, the government submitted extensive witness statements and documents to establish the prima facie case, and that evidence was not privileged. The government was not relying on privileged information to make the prima facie case. That's unlike Zolan. Now, once the prima facie case had been made, the Zolan case does leave the option open at the court's discretion to review all of the communications that are going to be ordered to disclose. However, here, when we're talking about a time period of almost three years, withheld documents amounting to at least 1,600 documents, plus potential witnesses that would be subject to, I guess, in-camera examination by the district court, that's just unreasonable under these circumstances. Well, 1,600 isn't a lot, really. Well, 1,600 documents, not pages. And the documentation in this case is extensive. The government isn't sure exactly how many pages that would amount to. But not only that, but for the district court to also make a determination on those 1,600 documents, let's say, based just on the submission by the government would be incredibly challenging to the district court. And to the extent that, again, the appellants had a problem with a particular document that they believe was outside the scope of the order, they still had the option to bring it to the district court. But the problem is the order is drafted so broadly that it really encompasses what seems to be the entirety of the relationship, the attorney-client relationship, at least from what I can see from the briefs. I'd like to address that point, Your Honor, with the time I have left. There are several limiting factors on the scope of the order that the government believes actually make the order proper and that this court should affirm it. First, the order is limited as to time. It's limited from October of 1998 through October of 2001. Seems like a long period of time, but the evidence established by the government begins the false statements and filings with the SEC in October of 1998 through the delisting of the stock in September of 2001 and the last monies being withdrawn by Khashoggi from the ultimate accounts in October of 2001. The investigation here didn't begin until after that point. Another limiting factor on the actual order is, contrary to the appellant's claims, the order is very specific with respect to documents, with respect to parties, and with respect to agreements. The appellants make the claim that the order requires the disclosure of all communications regarding the annual report, for example, of Genesis. That's simply not true. It requires the disclosure of communications concerning the false representations and omissions within the annual report. The appellants claim that the government the government It is limited with respect to the misrepresentations and omissions concerning ultimate, as the entire order is. The entire subject matter of the government's request here is the use by the targets of ultimate to acquire the unlawful stock loans, trade Genesis stock, and make false representations about that. That's the scope of the scheme here, and that's what the government has requested. To the extent the appellants set up this straw man that we're seeking everything, that's not what the government has sought here. Now, another limiting factor on the scope of the order, again, is with respect to the description of the agreements, for example, that NIDA and Maloney prepared. The government hasn't requested all loan agreements entered into by Genesis. It's all loan agreements between Genesis and ultimate. The entity that the government established was used by the targets to manipulate the stock, to obtain the unlawful stock loans, and to make misrepresentations to the market. The entirety of the order, to the extent that it requires disclosure of substantial information, doesn't go towards over breadth. What that shows is the extent and the nature to which the targets use this offshore entity to purchase stock, to manipulate the price, to obtain $130 million in unlawful stock loans, to finance this company that was, in essence, broke. That money is what kept the company afloat. Now, with respect to the case law, and to the extent there is a tension in the case law, the appellant's cite to the Bauer case, which is in this circuit, and the Bauer case, yes, it is correct, in that case, the court found that the lawyer's advice, not to lie, wasn't in furtherance. But that case really is distinguishable, because, again, in this case, the district court refused the government's request for opinion work product. That advice wouldn't be subject to disclosure here. The client's questions, or admissions of fact, that led to the seeking of the advice, could have been subject to disclosure here. But the legal advice would have been this work product. The district court specifically interlineated in the order here, no work product, because the government didn't meet, didn't make a sufficient showing. So no opinion work product, yes, Your Honor, that is correct. Fact work product would still be subject to disclosure. Although, I mean, I think that's a difficult parsing between opinion and fact work product, and that's another thing that the appellants could have taken to the district court on an in-camera request, to the extent they had a problem with the required disclosure. I mean, I don't know how you can draw the distinction, given the categories. For example, 11, the legality, propriety, legal consequences, or effect of trading or pledging, genesis stock, 10, the negotiation, documentation, preparation, execution, legality, interpretation, contents, enforcement, disclosure, concealment, or implementation of any agreement. I mean, those are very, very broad categories. Well, they are very broad, but it must be understood there are two parties to these communications, the client, and maybe factual admissions that that client is subject to fraud, and statements of representations by the attorney. Much of which, as opinion work product, wouldn't be subject to disclosure. To the extent that the clients, or putative clients here, Al Batraoui, Khashoggi, other genesis management, are making factual representations to their attorneys, in which they're making admissions about their present conduct and their future conduct, that are related to this fraud and scheme, that would be subject to disclosure. To the extent that the attorneys are providing their legal opinions that hadn't previously been disclosed, or in some way, that hadn't previously been disclosed, that would render the privilege breached and waived, that's not subject to disclosure here, because the district court refused work product. And really, I think an assessment of the breadth here, I think that's important, an important limitation on the scope. We have time limitations, we have the opinion work product limitations. Specific documents are identified here. This isn't a situation where you just ask for all letters. The SEC filings that contain the misrepresentations are all listed. Specific letters are identified by date and party as to what is required to be disclosed. But when you say all documents pertaining to the SEC filings, that's an odd thing. No, but the filings are identified as follows. But anything relating to it, considering the execution of legality. In which a specific omission has been made concerning ultimate. It is qualified. That doesn't say that in the paragraph. I take your point that you are trying to make an overall limitation. But when you use the phrase, any and all communications between ultimate and S&M, any and all communications between Kashoggi and N&M goes down. And those are really broad categories. I'm sorry, that was Appendix A, which is crossed out. Appendix B, though, negotiation, documentation, preparation, execution. That is correct. And with many of those documents, for example, the first couple of categories are loan agreements between Genesis and Ultimate. The government's prima facie case established in the district court showed that Ultimate was entirely a fraud. Everything having to do with Ultimate and Genesis was in furtherance of this crime and fraud. From the beginning, the lead targets were using Ultimate to covertly finance the company and not disclosing the source of the funds. Then they began using Ultimate to purchase stock, to manipulate the stock price. Why is that? Because if the stock price dropped below the contract price on the unlawful stock loans, the collateral would have had to have been returned. Are you really saying, in terms of this argument, that in any securities fraud case, you're entitled to all client communications with the attorney concerning filings? No. And that is a very good point, Your Honor. The argument of the appellants is really asserting that, well, if 90% of an annual report is accurate, but 10% is false, and knowingly false and intentionally false, well, the crime fraud exception can't get to that 10% because the rest of the document was, I guess, had some legitimate purpose. In the context of a public company, an SEC filing, by definition, has some If this any legitimate purpose was a test for defeating the crime fraud exception, public companies would have a bulletproof shield to make misrepresentations to the public through their attorneys. What this case is about is that 10% within the proverbial genesis annual report concerning the specific material misrepresentations and omissions about Ultimate. It's not about the rest of their filings. The government, the order in no way references other transactions in other parties other than a transaction involving, I think it was Carl Icahn. But again, that ties back to Ultimate. All of the government's requests tie to the use of Ultimate to covertly finance the company, to manipulate the stock price, and to basically mislead the market about these other two activities. Was there any evidence in the record about the Icahn communications? Maybe I missed it, but I didn't see any. I don't have the excerpt of records. I'm sorry, Your Honor. The specific letter is coming from the attorneys at NIDA and Maloney to Carl Icahn's representatives. Carl Icahn's representatives had questions about the disclosures about Ultimate and whether or not there was some kind of improper relationship between Ultimate, Mr. Elbertraui, and the company. In the letters coming from NIDA and Maloney, the relationship was misrepresented.  The evidence that the government submitted to the district court was patently false. They patently misled the Icahn group. Why? They wanted an investment, first in equity, and then when the Icahn group kind of waffled at that, at least some sort of financing, which is where the deal eventually went. But they affirmatively misled the Icahn group regarding the relationship between Elbertraui and Ultimate. That's just one example of the type of communication through which the targets misled potential investors through their attorneys. That's exactly what this case is about. It's not about all the work provided by NIDA and Maloney. Because while the criminal offenses here that are alleged by the government, the misrepresentations and the SEC filings, start almost from the very beginning when Genesis first sought to go public back in 1998. Again, the government hasn't alleged that everything related to Genesis was a fraud. Everything related to Genesis that concerned Ultimate was a fraud. That was a part of this crime. It was a part of the government showing, prima facie showing, that the targets manipulated the stock price and lied about that trading activity. Absent some other questions from the court, I think I'm finished with my presentation. Thank you, Counsel. Thank you, Your Honor. Your Honor, if I might just start with the last comment that Mr. Cazares mentioned about Carl Icahn. My recollection of the letter is very different from his. It's that he said that it had no information with respect to any connection between the two of them. My recollection, it did spell out the nature of the relationship. And one of the things that the government keeps omitting, which is a really important fact, is that Ultimate's purchases and L. Betraui's purchases were always fully disclosed. Every single one of them were published in the 13Ds. And in the 13Ds, Khashoggi's name was disclosed as the beneficial owner of Ultimate. And in the press, Mr. L. Betraui repeatedly talked about his close relationship with Mr. Khashoggi. So there was no effort to hide the nature of the relationship at all. And the Icahn letter was the lawyer's take on the history between the two people, not that there was absolutely no relationship between them at all. So that's not correct. And again, I mean, that letter's been disclosed. I'm sorry? That letter's been disclosed. Yes, that's correct. Because Icahn received it. That's correct. And so what they're trying to seek is any communications that led up to the issuance of the letter. Correct. They're trying to get all the other. And again, that's the problem, because you can imagine a whole variety of different conversations between Mr. L. Betraui or whoever else was involved and the lawyers about what's the nature of the obligation to disclose, whether disclosure, in fact, was made. What we don't know, and what this Order deprives us of knowing, is we don't know whether any particular communication was in furtherance of the offense. And to address your comment earlier about the Court's order where we have a some mechanism for challenging whether or not I believe a document is within the 12 categories or not, I think even if it did say that, and I don't believe it does, and I can go through the language again because I reread it and I think very clearly it says, you know, within the Court's definition of the crime-fraud exception, you can't challenge that. It's only if something is outside of that. And the Court's definition, I think pretty clearly, is Exhibit B to the Court's order. But even with that, I still don't think it would be an appropriate order, because the burden is on the government. I mean, we're talking about invading the attorney-client privilege. And we're talking about the government invading the attorney-client privilege. And the government's coming in here and very cavalierly saying, well, we put a lot of limits in our order. If you read that order, there are no limits. Everything is fair game within certain categories. But it's the government's burden, and this is Ninth Circuit law, it is Second Circuit law, it's Supreme Court law, it's the government's burden to show that a particular communication itself is an aid, is in furtherance of the crime-fraud exception. And the government simply cannot do that in this case and has not done that in this case. And notwithstanding that, the Court has shifted the burden and said now everything gets produced. And that's what's so offensive about this order. Now, the Sixth Circuit, an in re-grand jury, in re-antitrust grand jury, basically says we've canvassed all the case law, and we think all circuits agree with us that particularly where the government's evidence in piercing the attorney-client privilege is filed in camera, which it all was here. We didn't get to see any of their evidence. It was all filed in camera. Particularly where it's filed in camera, then we think the appropriate remedy is once the government has made its prima facie showing that a crime or fraud was committed, that all of the documents that it seeks to be disclosed, all communications, must be reviewed in camera, because that is the only way to fairly determine whether a particular communication was in aid of or in furtherance of the crime or fraud. And in our theory, in camera inspections work, but in practice, two things. District courts, of course, don't like it very much because it puts a terrible burden. The second thing is the district court is in a tough position to know exactly what the government's theory is. In other words, if it's looking at a document, it may be terribly significant to the government in terms of proof, but the judge may or may not recognize that. Your Honor, I'm not sure how one can reconcile that, but I think it's, you know, it's a... Yeah, I think it's an interesting question. I think, you know, what Zolan says about that is they say to the district court, you don't have to review the documents. You know, you have the discretion to review the documents or not, but if you don't review them, you can't order them produced because we're going to protect the attorney client privilege unless the government makes this showing, and unless you actually, after looking at the document, conclude that it is in furtherance of the crime or fraud. Here, you know, there are certain, there are certain issues that are just so incredibly broad and so clearly outside the scope of the privilege. For example, you know, if you just look at the last two categories, the legality, propriety, legal consequences or effect of trading in or pledging of Gini stock by El Betraui or Ultimate in exchange for loans. And the last one is reporting and or disclosure obligations of El Betraui concerning ownership of Genesis stock. That's the kind of stuff that you normally go to a lawyer for to get, you know, legitimate legal advice. What are my obligations? And anything that relates to the lawyer telling the client what his obligations are, what the legal consequences are, what the propriety is, whether or not the client abides by it or not, in either case, that doesn't come within the crime fraud exception under Bauer, but in either case, even if it's neutral, even if it's nothing more than the lawyer just informing as to what the law is, what the obligations are, under here it gets produced. And under no reported decision, no reported decision, would that kind of communication be fair game. And finally, with respect, Judge Thomas, to your comment about the 10ks of Ultimate. And remember, the government hasn't proven any case against Ultimate. They've tried to piggyback and say because El Betraui was the president of Ultimate – I'm sorry, Genesis. Because El Betraui was the president of Genesis, they're stuck with this conduct even though they didn't authorize any of what's going on here. I mean, the stock loans are personal, buying the stock is personal, filing the 13Ds is personal, but somehow they're trying to jam it over on Genesis' side. In paragraph 4 of the order, they say, "...the preparation, form, contents, accuracy, legality, interpretation, timing, execution, and filing with the SEC of all these documents." And then they make the statement, "...all of which fail to disclose the relationship between El Betraui and Ultimate." That doesn't limit it. It's just the Court's comment as to what she's finding these things do. And that's the only place where there is any additional statement by the Court, everything else, and all the other categories with respect to all the other SEC filings, just says, preparation, form, everything, everything, including but not limited to, and then just says the forms. Thank you, Your Honor. Thank you, counsel. The case is here to be submitted for decision.
judges: Canby, Thomas, Conlon